UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| **STEVE BAUS,** *on behalf of himself and all others similarly situated*,<br><br>      *Plaintiff*,<br> v.<br><br>**FLUENT, INC.,** and **FLUENT, LLC** d/b/a **SAVETODAY,**<br><br>      *Defendants*. | Civil Case No.: 2:24-cv-801<br><br>**COMPLAINT - CLASS ACTION**<br><br>**Jury Trial Demanded** |

**INTRODUCTION**

1. This action arises out of the offensive telemarketing practices of Defendants Fluent, Inc. and Fluent, LLC ("Defendants" or "Fluent") that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.,* and the Washington Do-Not-Call Statute, RCW 80.36.390.

2. Defendants sell leads and advertising services to their advertising clients. Defendants collect data from various sources, including through consumer surveys by luring consumers to Defendants' various lead generation websites by promising free gift cards, job opportunities, and the like.

3. Defendants offer consumer lead generation services to their business clients. Defendants use various approaches to engage with consumers, including enticing consumers to complete surveys for prizes and providing information when responding to job openings. Among the many trade names Defendants employ, Defendants use "SaveToday" as a trade name to engage in unsolicited robocalling campaigns to provide leads for clients who Defendants refer to as "licensed Medicare Reps."

4. Between November 2023 and February 2024, Plaintiff Steve Baus ("Plaintiff" or "Mr. Baus") received numerous telephone solicitations to his residential cellular telephone number registered on the National Do-Not-Call Registry from "SaveToday" soliciting Mr. Baus to enroll

in certain Medicare benefits or seeking other things of value from Mr. Baus.

5. Mr. Baus never had any business with Defendants, nor with SaveToday, and he never provided his prior express written consent to receive any phone calls from Defendants or SaveToday.

6. Mr. Baus demanded that the phone calls stop and that he be placed on Defendants' internal do-not-call list as early as November 2023. However, Defendants disregarded his demands and continued to call his residential cellular telephone number.

7. Accordingly, Mr. Baus brings this action on behalf of himself and Class members under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), and the Washington Do-Not-Call Statute ("WDNC"), RCW 80.36.390, *et seq.*, to seek equitable and legal remedies available under the law for his injuries and to enforce consumers' rights to be free from annoying and harassing telephone solicitations that he and Class members do not want.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA. *Mims v. Arrow Fin. Servs.*, LLC, 565 U.S. 368 (2012). This Court has supplemental jurisdiction over the state law claims because they share a common nucleus of operative fact with the TCPA claim. *See* 28 U.S.C. § 1367.

9. This Court has personal jurisdiction over Defendants because this lawsuit arises from Defendants, in person or through agents, transacting business within this state, committing tortious acts within this state, and owning phone numbers with area codes within this state that were used during the phone calls to Plaintiff that are the subject of this lawsuit. In addition, Defendants targeted a resident of this state by calling a telephone number with a known Washington area code.

10. Venue is proper in this District because a substantial part of the acts and omissions giving rise to the action occurred in this District.

## PARTIES

11. Plaintiff is, and at all times mentioned herein was, a citizen and resident of Woodinville, Washington.

12. Defendant Fluent Inc. is, and at all times mentioned herein was, a corporation organized and existing under the laws of Delaware with its principal place of business at 300 Vesey Street, 9th Floor, New York, NY 10282.

13. Defendant Fluent LLC is a wholly owned subsidiary of Fluent, Inc., and is a Delaware limited liability company with its principal place of business at 300 Vesey Street, 9th Floor, New York, NY 10282.

14. All of the phone calls were placed by Defendants to Plaintiff's phone number using a Washington area code (206). The callers with whom Mr. Baus spoke also knew his Washington zip code.

## TCPA BACKGROUND

15. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

### *Telemarketers Must Observe the National Do-Not-Call Registry and Keep an Internal Do-Not-Call List*

16. The TCPA and its regulations establish a national "do not call" database of numbers that telemarketers must not call. 47 U.S.C. § 227(c); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

17. These regulations are codified by the Federal Communications Commission ("FCC") at 47 C.F.R. §§ 64.1200(c)(1)-(2) pursuant to 47 U.S.C. § 227(c)(2)–(3).

18. Specifically, no person or entity shall initiate any "telephone solicitation" to a

telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

19. A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

20. The TCPA also specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

21. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of…company-specific do not call systems…)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." *Id.* at (c)(1)(A), (E).

22. Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

23. The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

24. However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

25. These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

26. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no

less than five years from the time the request is made. 47 C.F.R. § 64.1200(d)(1), (2), (3), (6).

27. These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

28. Accordingly, all telemarketing calls violate the TCPA, unless Defendants can demonstrate that they have implemented the required policies and procedures.

29. There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> "[S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]'" 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

30. These requirements are separate but cumulative. In other words, a company must comply with both the procedures for the company specific do-not-call list *and* the procedures for complying with the national "do not call" database regulations. A failure to comply with either is a separate and distinct violation of 47 U.S.C. § 227(c).

31. Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones that are used for residential purposes. *See* 47 C.F.R. § 64.1200(e).

---

[1] The FCC draws a distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 C.F.R. § 64.1200(f)(14), which can be established by a "voluntary two-way communication." 47 C.F.R. § 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 C.F.R. 64.1200(f)(5)(i). "Telemarketing purposes," on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 C.F.R. § 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

*Vicarious Liability*

32. A person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g.*, *In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Netowrk, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶ 28 (2013).

33. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories, including vicarious liability. Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

**FACTUAL ALLEGATIONS**

34. Mr. Baus is the user of a cellular telephone number ending in 2287.

35. Mr. Baus' cellular telephone number ending in 2287 is used for residential purposes, including all of his personal and household business, calling family and friends, and receiving calls from his family and friends.

36. Mr. Baus' telephone number ending in 2287 has been on the National Do-Not-Call Registry since 2007.

37. On or about November 9, 2023, Mr. Baus began receiving unwanted telephone solicitations made by or on behalf of Defendants to his cellular phone number ending in 2287.

38. These calls all came from various phone numbers that used a (206) area code, including (206) 705-7898 and (206) 705-9144.

39. The first call came on November 9, 2023, from (206) 705-7898. The representative stated that they were calling from "Save Today" to tell Mr. Baus about Medicare benefits. The representative attempted to transfer Mr. Baus to a "licensed Medicare Rep," but the call was not connected. The caller said, "For some reason they're busy today, so I guess we'll give you a call back later. Thank you," and the caller abruptly ended the call.

40. Mr. Baus called the phone number back to identify who was responsible for the call because the caller unlawfully failed to identify the company on whose behalf the call was being made. Once the call connected, he heard the sound of a computer-generated voice say his first name and then a real person said:

> Hi, good morning, Steven. It's Donna Hubbard with SaveToday on a recorded line. And I was contacting you this morning regarding new Medicare Benefits recently introduced in your zip code. And this is only for individuals that have Medicare Parts A and B, the red, white, and blue card.

41. During this phone call, Mr. Baus asked, "Why don't you guys check the Do-Not-Call Registry before you call people." Over the course of the phone call, the person identifying herself as Donna Hubbard claimed to have called Mr. Baus' phone number in response to a visit to "one of our [web]sites," where someone checked a box at the bottom agreeing to be called.

42. Mr. Baus never went to a website where he gave express written consent to be called, including from Defendant or anyone offering Medicare products or services. Thus, the phone call to Mr. Baus was made in violation of the National Do-Not-Call list.

43. Donna Hubbard read back an email address that was not Mr. Baus' email address.

44. Rather than apologize for placing the unwanted calls, Donna Hubbard suggested that Mr. Baus "don't pick up the phone" if he does not have time to be called about Medicare.

45. In response to Mr. Baus' request for the alleged opt in information and identity of the individual that provided Mr. Baus' number to Defendants, Donna Hubbard's supervisor (who did not identify himself) stated that "we don't have that available here in this office." The supervisor agreed to put Mr. Baus on the company's internal do-not-call list and stated that he would contact the "main office" and direct that the opt in and lead provider information be sent to

Mr. Baus via mail. The supervisor confirmed Mr. Baus' mailing address over the phone.

46. No information was ever received by Mr. Baus. On information and belief, the information was never sent, and the supervisor never "contacted the main office." The supervisor stated that they were in New York.

47. Defendants and their agents and representatives—including Donna Hubbard and her supervisor—failed to take appropriate measures to place Mr. Baus' phone number on the internal do-not-call list, or did not observe any such procedures.

48. Defendants failed to record and honor Mr. Baus' do-not-call request.

49. On January 4, 2024, Mr. Baus received an unwanted phone call to his 2287 number from (206) 705-7898. The caller stated her name was Madison Bailey and that she was "with Save Today." After some introductory statements, the caller attempted to transfer Mr. Baus to a "licensed Medicare Rep" to provide more information about "new Medicare benefits being offered in Mr. Baus' zip code." After about one minute of attempting to perform the transfer, the call suddenly dropped, and Mr. Baus hung up the phone. Mr. Baus was never connected to the intended transferee. Mr. Baus was bothered by the phone call and only stayed on the line because he wanted to identify the caller and get the phone calls to permanently stop. If he had been given the identity of the caller, he would not have stayed on the line.

50. On February 16, 2024, Mr. Baus received an unwanted phone call to his 2287 phone number from (206) 705-9144, from a person claiming to be Melissa Smith "with Save Today," calling to "let him know that Medicare added some brand new benefits being offered in his zip code." The representative stated that she was calling from Save Today "on behalf of Medicare." The caller attempted to transfer Mr. Baus to a "licensed Medicare Rep," but the transfer never connected. Mr. Baus was bothered by the phone call and only stayed on the line because he wanted to identify the caller and get the phone calls to stop permanently. If he had been given the identity of the caller, he would not have stayed on the line.

51. On February 17, 2024, Mr. Baus received an unwanted phone call to his 2287 phone number from (206) 705-9144, and a caller claiming to be Jane Brown, calling to "update him about

extra added benefits for Medicare Parts A and B." Mr. Baus desired to be transferred solely to learn the identity of the calling parties so that he could get these bothersome phone calls to stop. Because Mr. Baus' previous calls were not being transferred, Mr. Baus believed that the business he was being transferred to had blocked calls *from* his phone number, while failing and refusing to adopt procedures that required that its systems and vendors not initiate calls *to* Mr. Baus. Therefore, rather than agree to be transferred (which would only disconnect – and result in continued calls to Mr. Baus), Mr. Baus gave the caller an alternative phone number and asked to be called there. He did this only so that he could be connected from another phone number to the "licensed Medicare Rep" to whom Defendants were attempting to transfer him to be compensated for the transfer of Mr. Baus as a "lead." Mr. Baus made these statements only to be connected to the business, so he could identify the business. Had the company been identified and not blocked his number (from only inbound but not outbound calls), he would not have asked the agent to call him at an alternative phone number.

52. Defendants and their vendors used a method called "neighbor spoofing" to make it appear on Mr. Baus' caller ID that the calls were from a friend or neighbor because of the area code, in an effort to make it more likely that Plaintiff and Class members would answer the call because they falsely believed the phone call was from a person they might know. However, at least one call was placed by a call center that was in New York. The caller ID showed originating phone numbers with an area code assigned to Mr. Baus' locale in Washington. This is prohibited by the TCPA. *See* 47 U.S.C. § 227(e). The FCC has found that misrepresenting the origin of a call, when employed to further an unlawful robocalling campaign, indicates an intent to cause harm. *Roesel Forfeiture Order*, 33 FCC Rcd. 9204, 9218–19, ¶ 40 (2018).

53. Defendants failed to honor Mr. Baus' do-not-call request and failed to adopt, implement, or adhere to policies and procedures to ensure that his do-not-call request was honored. Mr. Baus demanded not to be called as early as November 9, 2023. Despite Defendants' representative assuring that Mr. Baus would be placed on the company's internal do-not-call list,

Mr. Baus continued to receive unwanted calls from Defendants after 30 days and within a year of the demand.

54.  Defendants' records or the records of third parties will reveal all of the calls Defendants made, or had made, to Mr. Baus and Class members.

55.  Defendants and those calling on Defendants' behalf, did not have written do-not-call policies or procedures at the time of the calls to Mr. Baus and Class members. Whatever written policies existed either failed to comply with the minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), or were never properly implemented—including as evidenced by the continued calls to Mr. Baus after he directly asked not to be contacted.

56.  Defendants' violations were willful and knowing, or at the very least negligent.

57.  Plaintiff and Class members were damaged by the violations alleged herein. Their privacy was invaded, Defendants' calls temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the unwanted calls. The calls were annoying, a nuisance, and wasted the time of Mr. Baus and Class members. *See, e.g.*, *Mims*, 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

58.  According to Defendants' annual report for 2023,[2] Defendants offer digital marketing services to advertisers. Defendants "access" consumers through owned and operated digital media properties and auxiliary syndicated performance marketplace products. Their business can be broken down into five "offerings and solutions" to clients, one of which the annual report refers to as "Call Solutions Marketplace."

59.  Defendants' Call Solutions Marketplace is a call center operation that sources live call transfers, connecting consumers that were sourced by Defendants to advertising clients (*i.e.*, sales lead generation).

60.  Defendants are "SaveToday."

---

[2] https://www.sec.gov/ix?doc=/Archives/edgar/data/1460329/000143774924010639/flnt20231231_10k.htm

61. Defendants identify "SaveToday" as one of many "Trade Names/DBAs" for Fluent (NY), LLC in an Amendment to Credit Agreement document filed with the SEC on or around May 27, 2018.[3]

62. The Federal Trade Commission ("FTC") filed a lawsuit against Fluent, LLC, and other Fluent, Inc. subsidiaries, in the United States District Court for the Southern District of Florida in 2023, *United States v. Fluent, LLC*, Case No. 9:23-cv-081045, wherein Defendants were alleged to be engaged in consent farming, *i.e.*, concocting fake evidence of consumer consent. "SaveToday" was identified as one of many "acronyms and generic DBAs" that Fluent included in a long list of "marketing partners" on one of Fluent's websites. *See* FTC Complaint, ¶ 120 (ECF No. 1) in the FTC lawsuit. On the same day the FTC Complaint was filed, Fluent joined the FTC in a Motion to Approve Consent Judgment imposing a $2.5 million fine and requiring changes in business practices, including a ban of robocalls and placing calls to numbers on the National Do Not Call Registry. *See* ECF No. 4-1 in the FTC lawsuit.

63. After a diligent investigation—including certain Secretary of State filings, SEC documents, and Google searches—these two documents appear to be the only publicly available information connecting "SaveToday" with Defendants' real identity. In other words, Plaintiff's investigation has not revealed that anyone other than Defendants is using "Save Today" to conduct telemarketing or sell anything related to Medicare.

64. Plaintiff will pursue the identities of additional actors to name as potential defendants in discovery, such as the entities who are the purported "licensed Medicare Reps" on whose behalf the calls were also placed, and Defendants' vendors who initiated the phone calls. The identities of Defendants' agents are not publicly available or otherwise known to Plaintiff at this time.

## DEFENDANTS' LIABILITY

65. Defendants used automated systems to make telephone calls, to hundreds if not

---

[3] *See* https://www.sec.gov/Archives/edgar/data/1460329/000119312518097889/d558991dex102.htm (last visited May 8, 2024).

11

thousands of consumers across the United States, including to consumers who have not provided their prior express consent, with whom there was no established relationship, and whose residential phone numbers are listed on the National Do-Not-Call Registry.

66. Defendants made two or more telephone solicitations to Mr. Baus, whose number was on the National Do-Not-Call Registry for more than 30 days when the calls were placed. This constitutes a violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

67. Defendants made two or more telemarketing calls to Mr. Baus despite not having in place the required policies and procedures prior to making such calls. This constitutes a violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.6200(d).

68. Defendants made telephone calls to Mr. Baus in violation of RCW 80.36.390.

## CLASS ACTION ALLEGATIONS

69. Mr. Baus brings this action under Fed. R. Civ. P. 23 on behalf of the following Classes:

**The National Registry Class**: All persons within the United States to whose telephone number Defendants placed (or had placed on their behalf) two or more telephone solicitations and/or text messages in a 12-month period when the telephone number to which the telephone calls or texts were made was on the National Do-Not-Call Registry for more than 30 days at the time of the calls/texts, from four years prior to the filing of the Complaint through class certification.

**The National Policy Class**: All persons within the United States to whose telephone number Defendants placed (or had placed on their behalf) two or more telemarketing calls and/or text messages in a 12-month period, from four years prior to the filing of the Complaint through class certification.

**The Washington Call Subclass**: All persons within the State of Washington to whose telephone number Defendants placed (or had placed on their behalf) two or more telephone calls or texts, from three years prior to the filing of the Complaint through class certification.

**The Washington Registry Subclass**: All persons within the State of Washington to whose telephone number Defendants placed (or had placed on their behalf) two or more telephone calls and/or text messages when the telephone number to which the telephone calls or texts were made was on the National Do-Not-Call Registry, from three years prior to the filing of the Complaint through class certification.

**The Washington Policy Subclass**: All persons within the State of Washington to whose telephone number Defendants placed (or had placed

on their behalf) two or more telephone calls and/or text messages within a 12-month period, from three years prior to the filing of the Complaint through class certification.

70. Excluded from the Classes are Defendants and any entities in which Defendants have a controlling interest; Defendants' agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families; and any claims for personal injury, wrongful death, and/or emotional distress.

71. The Class members for whose benefit this action is brought are so numerous that joinder of all members is impracticable. The Classes are comprised of hundreds, if not thousands, of individuals.

72. The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant and/or third parties maintain written and electronically stored data showing:

    a. The time period(s) during which Defendants made the calls;

    b. The telephone numbers to which Defendants called;

    c. The telephone numbers for which Defendants had prior express written consent;

    d. The purposes of such calls; and

    e. The names and addresses of Class members.

73. There are common questions of law and fact affecting the rights of the Class members, including, *inter alia*, the following:

    a. Whether Defendants (or someone acting on their behalf) make telemarketing calls to Plaintiff and Class members;

    b. Whether Plaintiff's and Class members' phone numbers were registered on the National Do-Not-Call Registry;

    c. Whether Defendants had the required policies and procedures prior to making telemarketing calls;

        d.      Whether Defendants' statutory violations were willful and knowing; and

        e.      Whether Defendants should be enjoined from engaging in such conduct in the future.

74. Plaintiff is a member of the Classes. Defendants made two or more calls for telemarketing purposes, in a one-year period to his telephone number, without his prior express written consent, and he received calls more than 30 days after his telephone number was on the National Do-Not-Call Registry and more than 30 days after he asked Defendants to stop calling him.

75. Plaintiff's claims are typical of the claims of the Class members in that they arise from Defendants' uniform conduct and are based on the same legal theories as these claims.

76. Plaintiff and Class members have also suffered concrete harm in addition to statutory damages, because all Class members spent time tending to Defendants' unwanted calls and suffered a nuisance and an invasion of their privacy.

77. Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

78. Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent him and the Classes.

79. Defendants have acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

80. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications.

81. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each Class member make individual actions uneconomical.

82. Common questions will predominate, and there will be no unusual manageability issues.

//
//

//
//

## FIRST CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiff and the National Registry Class)

83. Mr. Baus and the National Registry Class incorporate the foregoing allegations as if fully set forth herein.

84. Defendants made, or had made on their behalf, calls constituting telephone solicitations to Plaintiff's and National Registry Class Members' telephone numbers.

85. Plaintiff's and National Registry Class Members' telephone numbers were all on the National Do-Not-Call Registry for more than 30 days at the time of the calls.

86. Plaintiff and National Registry Class Members received two or more such calls in a 12-month period.

87. Plaintiff and National Registry Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

88. Plaintiff and National Registry Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

## SECOND CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On behalf of Plaintiff and the National Policy Class)

89. Mr. Baus and the National Policy Class incorporate the foregoing allegations as if fully set forth herein.

90. Defendants made numerous calls for telemarketing purposes to Plaintiff's and National Policy Class Members' telephone numbers.

91. Defendants did so despite not having a written policy pertaining to "do not call" requests.

92. Defendants did not provide training to its personnel regarding the existence or use of any internal "do not call" list or policy.

93. Defendants did not record or honor "do not call" requests.

94. Defendants made two or more telemarketing calls to Plaintiff and National Policy Class Members' telephone numbers in a 12-month period.

95. Plaintiff and National Policy Class Members are entitled to an award of $500 in statutory damages per telephone call pursuant to 47 U.S.C. § 227(c)(5).

96. Plaintiff and National Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 per telephone call, pursuant to 47 U.S.C. § 227(c)(5).

### THIRD CAUSE OF ACTION
**Violation of Washington Do Not Call Statute**
**RCW 80.36.390,** *et seq.*
**(On Behalf of Plaintiff and the Washington Call Subclass)**

97. Mr. Baus and the Washington Call Subclass incorporate the foregoing allegations as if fully set forth herein.

98. "A person making a telephone solicitation must identify him or herself and the company or organization on whose behalf the solicitation is being made and the purpose of the call with the first 30 seconds of the telephone call." RCW 80.36.390(3).

99. Defendants failed to identify themselves at any time during the phone calls to Plaintiff and Washington Call Subclass members.

100. Plaintiff had to stay on the line longer than 30 seconds to try and identify the caller. When no identifying information was provided during the call, Plaintiff had to conduct substantial research after the phone calls to identify Defendants.

101. Plaintiff and Washington Call Subclass members were aggrieved by repeated violations of this section.

//
//
//
//
//
//

16

//
//

## FOURTH CAUSE OF ACTION
**Violation of Washington Do Not Call Statute**
**RCW 80.36.390,** *et seq.*
**(On Behalf of Plaintiff and the Washington Call Subclass)**

102. Mr. Baus and the Washington Call Subclass incorporate the foregoing allegations as if fully set forth herein.

103. "It is unlawful for a person to initiate, or cause to be initiated, a telephone solicitation that violates 47 U.S.C. Sec. 227(e)(1) [prohibiting neighbor spoofing], as currently written or as subsequently amended or interpreted by the federal government. This subsection applies to all telephone solicitation intended to be received by telephone customers within the state." RCW 80.36.390(10).

104. Defendants' telephone solicitations to Plaintiff and Washington Call Subclass members employed neighbor spoofing in violation of § 227(e)(1).

105. Plaintiff and Washington Call Subclass members were aggrieved by repeated violations of this section.

## FIFTH CAUSE OF ACTION
**Violation of Washington Do Not Call Statute**
**RCW 80.36.390,** *et seq.*
**(On Behalf of Plaintiff and the Washington Registry Subclass)**

106. Mr. Baus and the Washington Registry Subclass members incorporate the foregoing allegations as if fully set forth herein.

107. "No person may initiate, or cause to be initiated, a telephone solicitation to a telephone number registered on the do not call registry maintained by the federal government pursuant to telephone consumer protection act, 47 U.S.C. § 227 and related regulations, as currently enacted or subsequently amended. This subsection applies to all telephone solicitation intended to be received by telephone customers within the state." RCW 80.36.390(9).

108. Defendants initiated and caused to be initiated telephone solicitations to Plaintiff's and Washington Registry Subclass members' phone numbers registered on the National Do-Not-Call Registry.

109. Plaintiff and Washington Registry Subclass members were aggrieved by Defendants' violations.

### SIXTH CAUSE OF ACTION
**Violation of Washington Do Not Call Statute**
**RCW 80.36.390, *et seq*.**
**(On Behalf of Plaintiff and the Washington Policy Subclass)**

110. Mr. Baus and the Washington Policy Subclass members incorporate the foregoing allegations as if fully set forth herein.

111. "If, at any time during the telephone contact, the called party states or indicates that he or she does not want to be called again by the telephone solicitor or wants to have his or her name, individual telephone number, or other contact information removed from the telephone lists used by the telephone solicitation . . . the telephone solicitor shall not make any additional telephone solicitation of the called party at any telephone number that the called party has requested be removed from the solicitor's telephone lists for a period of at least one year." RCW 80.36.390(7).

112. Defendants continued to place calls to Plaintiff and Washington Policy Subclass members after they stated or indicated that they wanted to no longer be called.

113. Plaintiff and Washington Policy Subclass members were aggrieved by Defendants' violations of this provision.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Classes, and appointing the undersigned counsel as Class Counsel;

B. An order declaring that Defendants' actions, as set out above, violate the statutes

referenced herein;

    C.    An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

    D.    An award of statutory damages;

    E.    An award of treble damages, enhanced damages, and punitive damages;

    F.    An award of reasonable attorneys' fees and costs;

    G.    Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: June 6, 2024          Respectfully submitted,

                                By:  <u>/s/ Samuel J. Strauss, WSBA #46971</u>
                                    Samuel J. Strauss, WSBA #46971
                                    STRAUSS BORRELLI PLLC
                                    One Magnificent Mile
                                    980 N Michigan Avenue, Suite 1610
                                    Chicago, IL 60611
                                    Telephone: (872) 263-1100
                                    Facsimile:  (872) 263-1109
                                    Email: sam@straussborrelli.com

                                    Thomas A. Zimmerman, Jr.
                                    *tom@attorneyzim.com*
                                    Jeffrey D. Blake
                                    *jeff@attorneyzim.com*
                                    ZIMMERMAN LAW OFFICES, P.C.
                                    77 W. Washington Street, Suite 1220
                                    Chicago, IL 60602
                                    Tel: (312) 440-0020
                                    Fax: (312) 440-4180
                                    *www.attorneyzim.com*

Max S. Morgan, Esquire
THE WEITZ FIRM, LLC
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
*max.morgan@theweitzfirm.com*

**Attorneys for Plaintiff and the Proposed Classes**